# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLEE DIVISION
### CIVIL CASE NO. 1:21-cv-00202-MR

S. SHANE SMITH,         )
                              )
           Plaintiff,     )
                              )
vs.                            )
                              )
NORTH CAROLINA DEPARMENT   )
OF PUBLIC SAFETY, et al.,      )          __ORDER__
                              )
           Defendants.   )
_____  )

**THIS MATTER** is before the Court on initial review of the Complaint. [Doc. 1]. Also pending is the Plaintiff's Motion for the Appointment of Counsel. [Doc. 3].

The *pro se* Plaintiff[1] is serving a life sentence for offenses he committed in 1990 including second-degree murder and arson. He filed the Complaint pursuant to 42 U.S.C. § 1983, the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Rehabilitation Act, 29 U.S.C. § 791, *et seq.*, and North Carolina law. The Complaint addresses incidents that

---

[1] According to the website of the North Carolina Department of Public Safety ("NCDPS"), the Plaintiff's name is Stanley S. Smith. See chrome-extension://hehijbfgiekmjfkfjpbkbam mjbdenadd/nhc.htm#url=https://webapps.doc.state.nc.us/opi/viewoffender.do?method=v iew&offenderID=0379861&searchOffenderId=0379861&searchDOBRange=0&listurl=pa gelistoffendersearchresults&listpage=1 (last accessed Jan. 10, 2022).

allegedly occurred at the Rutherford Correctional Center and the Foothills Correctional Institution, where he is presently incarcerated. [Doc. 1]. He names as Defendants: the North Carolina Department of Public Safety ("NCDPS"); Todd Ishee, the NCDPS commissioner of prisons; Ladonna Browning, the NCDPS regional director for the Mountain Region; Larry Williamson, the NCDPS program director for the Mountain Region; Larry Godwin, the Rutherford CC warden; FNU Wallace, the Rutherford CC accounting clerk; and Sapphire Newman, a Rutherford CC correctional officer. [Id. at 1, 4-5].

The Plaintiff, who was born without fingers or toes, asserts claims under the ADA and RA for failure to provide reasonable accommodations; claims under § 1983 for the violation of his First, Fourth, Sixth,[2] Eighth, and Fourteenth Amendment rights;[3] and claims under North Carolina law for breach of contract and intentional infliction of emotional distress. [See id. at 7, 30]. The Plaintiff alleges that he sustained physical pain and severe emotional distress as a result of the Defendants' actions. [Id. at 25, 32-33,

---

[2] The Sixth Amendment has no apparent application to this case. See note 6, *infra*.

[3] The Plaintiff's allegations that the Defendants have violated NCDPS and prison policy and procedure are liberally construed as claims of supervisory liability. See generally Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (unpublished) (holding that "prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of constitutional violation").

2

37-38].  He seeks declaratory judgment, "general" and punitive damages, additional appropriate relief, and a jury trial.  [Id. at 38-39].

## II.    STANDARD OF REVIEW

Even though the Plaintiff paid the full filing fee, the Complaint is nonetheless subject to dismissal if it "(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or (2) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).

In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).  Furthermore, a *pro se* complaint must be construed liberally.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III.   DISCUSSION

### A.    Parties

The body of the Complaint refers to individuals who are not named as Defendants in the caption as required by the Federal Rules of Civil

Procedure.  Fed. R. Civ. P. 10(a).  Such claims are nullities and they are dismissed without prejudice.  See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the complaint but who were served).

## B.    ADA and Rehabilitation Act Claims

The Plaintiff alleges that he is a qualified individual with a disability [Doc. 1 at 7, 30]; that he is eligible for services and programs provided by NCDPS [id. at 30-31]; that the Defendants discriminated against him by denying him access to reasonable accommodations for his disability [id. at 6, 30-31]; and that NCDPS receives federal funds [id. at 30].

To state a claim under the ADA, a plaintiff must show that: (1) he has a disability; (2) he was otherwise qualified to receive the benefits of a public service, program, or activity; and (3) he was denied the benefits of such service, program, or activity, or was otherwise discriminated against, on the basis of the disability.  See Nat'l Fed. of the Blind v. Lamone, 813 F.3d 494 (4th Cir. 2016).  The RA prevents federal grantees from excluding, denying benefits to, or discriminating against any otherwise qualifying individual "solely on the basis of his or her disability."  Halpern v. Wake Forest Univ. Health Sci., 669 F.3d 454, 461 (4th Cir. 2012) (quoting 29 U.S.C. § 794(a)).

4

The analysis under the ADA and RA are generally the same. <u>Freilich v. Upper Chesapeake Health, Inc.</u>, 313 F.3d 205, 214 (4th Cir. 2002); <u>see</u> <u>Baird ex rel. Baird v. Rose</u>, 192 F.3d 462, 468-6 (4th Cir. 1999) (noting that the causation elements differ).

Taking the allegations as true for the purposes of initial review, and construing all inferences in Plaintiff's favor, the Plaintiff has minimally alleged violations of the ADA and RA. However, neither Title II of the ADA nor Section 504 of the RA permits individual capacity suits. <u>See</u> <u>Barnes v. Young</u>, 565 F. App'x 272 (4th Cir. 2014). The ADA and RA claims against the NCDPS employee Defendants in their individual capacities are dismissed with prejudice, and the claims asserted against them in their official capacities are dismissed as duplicative. <u>See</u> <u>Love–Lane v. Martin</u>, 355 F.3d 766, 783 (4th Cir. 2004) (where a plaintiff has named the entity as well, an official-capacity claim can be dismissed as duplicative). The ADA and RA claims will proceed solely against NCDPS.

### C.    Section 1983 Claims

To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." <u>Am. Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49-50 (1999).

5

### 1. NCDPS

The Plaintiff attempts to assert § 1983 claims against NCDPS. However, "neither a state nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Therefore, NCDPS is not a "person" under § 1983. See Fox v. Harwood, 2009 WL 1117890, at *1 (W.D.N.C. April 24, 2009). The Plaintiff's § 1983 claims against NCDPS are accordingly dismissed with prejudice.

### 2. Retaliation

The Plaintiff appears to allege that the Defendants Wallace, Newman, Godwin, Browning, and Williamson retaliated against him for making verbal complaints, submitting grievances, and filing breach of contract action in Rutherford County Superior Court for breaching a March 2011 settlement agreement addressing the Plaintiff's disability accommodations.[4] Specifically, the Plaintiff alleges that his disability accommodations were removed and changed [Doc. 1 at 10-11, 26-29, 31-32]; that his property was seized, destroyed, and tampered with [id. at 23-28, 29, 31-32, 34]; that his

---

[4] In Smith v. Beck, 5:07-ct-3034-FL, the Plaintiff filed suit in the Eastern District of North Carolina under the ADA and RA, alleging inter alia that he was being denied reasonable accommodations for his disability. In March 2011, the case was dismissed upon the parties' joint stipulation after they successfully settled the case. [5:07-ct-3034, Docs. 62, 63]. The Plaintiff subsequently filed a breach of contract action in Rutherford County Superior Court against NCDPS, Ishee, Godwin, and Newman for failing to comply with the settlement agreement, Case No. 20-CVS-1174. [See Doc. 1 at 10]. The Rutherford County case is presently pending.

Case 1:21-cv-00202-MR   Document 9   Filed 01/26/22   Page 6 of 23

trust fund account funds were frozen and restricted [id. at 14-15, 29, 31-32]; that he was harassed and intimidated [id. at 22-23, 25-26, 29, 31-32, 34]; that he was threatened with a transfer to another prison [id. at 20]; that he was transferred to another prison [id. at 27-29. 31-32]; and that his mail was restricted, censored, and mishandled [id. at 16-17, 29, 31-32].

The First Amendment right to free speech "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. v. McGraw, 202 F.3d 676, 685 (4ᵗʰ Cir. 2000). Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4ᵗʰ Cir.1978). In order to state a colorable retaliation claim under § 1983, a plaintiff must allege: "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." Martin v. Duffy, 858 F.3d 239, 249 (4ᵗʰ Cir. 2017) (citation omitted). In the prison context, retaliation claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Adams v. Rice, 40 F.3d 72, 74 (4ᵗʰ Cir. 1994).

Taking the allegations as true for the purposes of initial review, and construing all inferences in Plaintiff's favor, the Plaintiff has plausibly alleged that Defendants Wallace, Newman, Godwin, Browning, and Williamson retaliated against him. These claims have passed initial review.

### 3. Personal Property and Trust Account

The Plaintiff alleges that Defendant Wallace froze his trust account in October 2020 and deactivated his commissary card for two weeks in December 2020 [Doc. 1 at 13-15]; that Defendant Newman confiscated Plaintiff's clothing and other personal care items and replaced them with items that did not accommodate his disability [id. at 26-28]; that Defendant Newman discarded and mishandled his mail [id. at 16-17]; and that Defendant Godwin refused to correct Defendant Newman's actions [id. at 16, 26].

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty that was accomplished by state action. Tigrett v. The Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988). Where a state

8

employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy.  Parratt v. Taylor, 451 U.S. 527 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Hudson v. Palmer, 468 U.S. 517 (1984); see Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975) (under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act); Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner).  The Parratt-Hudson doctrine does not apply, however, to deprivations that are a "result of some established state procedure."  Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982).

The Plaintiff alleges that these Defendants' actions were contrary to prison policy.  [Doc. 1 at 14-17, 23-26].  The Plaintiff has an adequate post-deprivation remedy for these incidents.  Accordingly, pursuant to the Parratt-Hudson doctrine, this claim is dismissed.

### 4. Mail

The Plaintiff alleges that Defendant Newman mishandled an outgoing certified mail letter in November 2020 [Doc. 1 at 16]; censored the Plaintiff's incoming mail [id. at 16-17]; and failed to forward the Plaintiff's mail to him when he was transferred to another prison [id. at 17].

As a general matter, prisoners have the right to both send and receive mail. See Thornburgh v. Abbott, 490 U.S. 401, 408 (1989); Pell v. Procunier, 417 U.S. 817 (1974). Restrictions on this right are valid if they are reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987) (setting forth a four-factor test to determine whether a prison policy is valid); see Haze v. Harrison, 961 F.3d 654, 658 (4th Cir. 2020) (noting that Turner applies to both convicted prisoners and pretrial detainees). For instance, a prisoner's First Amendment interest in corresponding does not preclude prison officials from examining mail to ensure that it does not contain contraband. Wolff v. McDonnell, 418 U.S. 539, 576 (1974). "[L]egal mail is widely recognized to be privileged and confidential—even in the context of prisons—which suggests that an incarcerated person's expectation of privacy in his legal mail is one 'that society is prepared to consider reasonable.'" Haze, 961 F.3d at 660 (quoting United States v. Catellanos, 716 F.3d 828, 832 (4th Cir. 2013)); see King v.

Rubenstein, 825 F.3d 206, 215 (4th Cir. 2016) ("nothing in Hudson[5] indicates the Supreme court intended to abrogate a prisoner's expectation of privacy beyond his cell."). A prison rule requiring that legal mail be opened in the presence of the inmate, without being read, does not infringe on a prisoner's constitutional rights. See Wolff, 418 U.S. at 575–77.

Taking the allegations as true for the purposes of initial review, and construing all inferences in Plaintiff's favor, the Plaintiff has plausibly alleged that Defendant Newman interfered with his mail. This claim has passed initial review.

### 5.    Access to the Courts

The Plaintiff alleges that Defendant Newman's restrictions on his personal and legal mail "deprived [him of] the ability to effectively communicate with persons trained in the law to assist [him] with challenging [his] conditions of confinement and attacking [his] sentence and conviction," and that the mail restrictions were done with the intent to prevent him from obtaining legal counsel to challenge the conditions of his confinement and his sentence and conviction.[6]  [Doc. 1 at 31-32].

---

[5] Hudson v. Palmer, 468 U.S. at 517 (holding that an inmate has no reasonable expectation of privacy, and thus no Fourth Amendment protection, in his prison cell).

[6] The Plaintiff cites the Sixth Amendment.  [Doc. 1 at 33-35].  However, he fails to allege that he was actually represented by counsel in his 1990 criminal case at the relevant time;

The Supreme Court stated in Bounds v. Smith, 430 U.S. 817 (1977), that prisoners must have meaningful access to the courts. The "meaningful access" referred to in Bounds does not, however, entitle a plaintiff to total or unlimited access. See Moore v. Gray, No. 5:04-CT-918-FL, 2005 WL 3448047, at *1 (E.D.N.C. Jan. 26, 2005), aff'd, 133 Fed. App'x 913 (4th Cir. 2005) (unpublished) (citation omitted). The right of access to the courts only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis v. Casey, 518 U.S. 343, 356-57 (1996). Moreover, as a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. See id. A plaintiff's "[f]ailure to show that a 'nonfrivolous legal claim has been frustrated' is fatal to his Bounds claim." Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting Casey, 518 U.S. at 353).

The Plaintiff fails to allege that he suffered any actual injury as a result of Defendant Newman's actions. Therefore, he has not stated a claim for the denial of access to the courts. This claim is dismissed without prejudice.

---

rather, he appears to allege only that he was seeking to obtain the representation of counsel.

## 6. Unreasonable Search and Seizure

The Plaintiff alleges that Defendant Godwin ordered and enforced searches of Plaintiff's property [Doc. 1 at 18, 24]; that Defendant Newman searched Plaintiff's property repeatedly [id. at 22-24]; that Defendant Wallace temporarily froze and restricted the use of Plaintiff's prison trust account [id. at 32]; and that Defendants Newman, Browning, and Williamson seized and confiscated Plaintiff's personal property [id. at 32-33].

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. CONST. amend. IV. "The applicability of the Fourth Amendment turns on whether 'the person involving its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action.'" King, 825 F.3d at 214 (quoting Hudson, 468 U.S. at 525 (internal quotations omitted)). "[P]risoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." Hudson, 468 U.S. at 530; see Drakeford v. Thompson, No. 09-2239, 2010 WL 4884897, at *4 (D.S.C. Nov. 24, 2010) (analogizing the freezing of money in an inmate account to the search of a prison cell).

The Plaintiff has failed to state a claim for relief under the Fourth Amendment for the search and seizure of property. These claims are dismissed.

### 7. Cruel and Unusual Punishment

The Plaintiff alleges that Defendant Newman tied knots in his clothing and computer cables, which created a painful and difficult problem for the Plaintiff to solve as he has no fingers. [Doc. 1 at 28]. He further alleges that Defendants Browning, Williamson, and Newman confiscated clothing and personal care items that accommodated the Plaintiff's disability and refused to supply adequate replacements. [Id. at 33-34, 37].

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment prohibition against cruel and unusual punishment." Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997). Rather, extreme deprivations are required, and "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal quotation omitted)). Further, a plaintiff must allege

and prove facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm. See Farmer v. Brennan, 511 U.S. 825, 847 (1994).

Taking the allegations as true for the purposes of initial review, and construing all inferences in the Plaintiff's favor, the Plaintiff has plausibly alleged that Defendants Browning, Williamson, and Newman imposed inhumane conditions of confinement. This claim has passed initial review.

## 8. Supervisory Liability

The Plaintiff asserts that Defendants Ishee, Browning, Williamson, and Godwin[7] are liable under § 1983 because the foregoing violations of Plaintiff's constitutional rights occurred with their knowledge, consent, or ratification; they failed to adequately train and supervise their subordinates; and the acts and omissions resulted from customs, practices, or policies of the State of North Carolina, NCDPS, and Rutherford CC.[8] [Doc. 1 at 7, 33, 35-36].

---

[7] The Plaintiff does not appear to assert supervisory claims against Defendants Wallace and Newman. [Doc. 1 at 36].

[8] The Plaintiff's allegations appear to be somewhat contradictory insofar as he alleges that certain actions or omissions were contrary to policy, but that supervisory liability attaches because the actions or omissions were pursuant to custom or policy. [compare Doc. 1 at 14, 16-17, 25-26 (alleging that Defendants Wallace, Newman and Godwin acted contrary to NCDPS policy); with id. at 36 (alleging that all of the Defendants' acts and omissions were "committed under color of law and/or pursuant to policies, customs,

"It is well settled that 'supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates.'" Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (quoting Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994)). A supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) there was an "affirmative causal link" between her inaction and the constitutional injury." Shaw, 13 F.3d at 799 (internal quotation marks omitted).

Taking the allegations as true for the purposes of initial review, and construing all inferences in Plaintiff's favor, the Plaintiff has plausibly alleged that Defendants Ishee, Browning, Williamson, and Godwin are liable under a theory of supervisory liability for the alleged constitutional violations that have passed initial review.

## D. Supplemental Jurisdiction

Federal district courts may entertain claims not otherwise within their adjudicatory authority when those claims "are so related to claims ... within

---

practices, rules, regulations, ordinances, statutes, and/or usages of the State of North Carolina, the NCDPS, and Rutherford CC")]. The Court will not attempt to resolve these inconsistencies at this early juncture.

[federal-court competence] that they form part of the same case or controversy." 28 U.S.C. § 1367(a). To exercise supplemental jurisdiction, a court must find that "[t]he state and federal claims ... derive from a common nucleus of operative fact" where a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966). When a district court dismisses all claims independently qualifying for the exercise of federal jurisdiction, it "ordinarily dismiss[es] all related state claims." Artis v. Dist. Of Columbia, 138 S.Ct. 594, 595 (2018); see § 1367(c)(3). A district court may also dismiss the related state claims if there is a good reason to decline jurisdiction. See § 1367(c)(1), (2), and (4).

### 1. Breach of Contract

The Plaintiff asserts that, through their acts and/or omissions, the Defendants "are not honoring the terms of [the settlement] agreement" [Doc. No. 1 at 36] as follows:

> [T]he Defendants in this action, as a retaliatory result of [Plaintiff's filing of] grievances against them and for the filing of that North Carolina Superior Court civil complaint, have taken away from [him] items which were purchased by NCDPS for [him] in order to comply with the terms of the Agreement and have either replaced them with items which do not meet [his] specific disability needs, or simply failed to replace the confiscated items at all, thus leaving [him] with nothing whereby failing to fulfill their obligations of the Agreement.

[Id. at 10-11]. Confusingly, the Plaintiff also asserts that he is "not seeking to argue the allegations [he] raised before the North Carolina Superior Court" in Case No. 20-CVS-1174. [Id. at 10].

The Plaintiff has failed to explain how the instant claim for breach of contract differs from the lawsuit that is already pending; it appears that he is attempting to enforce the terms of the March 2011 settlement agreement in both. The Court, therefore, declines to exercise supplemental jurisdiction over his breach of contract claim at this time.

### 2. Intentional Infliction of Emotional Distress

The Plaintiff asserts that Defendants Godwin and Newman engaged in a pattern of extreme and outrageous behavior that caused him physical pain and "emotional and mental conditions generally recognized and diagnosed by trained professionals." [Doc. 1 at 37]. He asserts that those Defendants, as well as Ishee, Browning, and Williamson, are liable because those acts "were committed under color of law and/or pursuant to policies, customs, practices, rules, regulations, ordinances, statutes, and/or usages of the State of North Carolina, the NCDPS, and Rutherford CC." [Id.].

The elements of intentional infliction of emotional distress are: "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." Dickens v. Puryear, 302 N.C. 437,

452, 276 S.E.2d 324, 335 (1981) (citations and quotation marks omitted). The severe emotional distress required for intentional infliction of emotional distress is "any emotional or mental disorder, such as for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe or disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Piro v. McKeever, 245 N.C. App. 412, 416, 782 S.E.2d 367, 371 (2016), *aff'd* 369 N.C. 291, 794 S.E.2d 501 (citations omitted). Conduct is "extreme and outrageous" when it "exceeds all bounds usually tolerated by a decent society." Shreve v. Duke Power Co., 85 N.C. App. 253, 257, 354 S.E.2d 357, 359 (1987) (citation and quotations omitted).

The Court need not decide whether the Plaintiff has adequately alleged whether the Defendants' conduct was extreme and outrageous, and that they intended to cause the Plaintiff severe emotional distress, because the Plaintiff has failed to adequately allege that he suffered a disabling emotional or mental condition as a result of Defendants' actions. The Court, accordingly, declines to exercise supplemental jurisdiction over the Plaintiff's claim for the intentional infliction of emotional distress at this time.

### E.  Motion for the Appointment of Counsel

The Plaintiff asks the Court to appoint counsel to represent him on the grounds that he is unable to afford counsel; that his severe physical disability greatly limits his ability to prepare and coordinate his claims without assistance; that he has no access to a law library or to the assistance of persons trained in law to guide him; that he has very limited knowledge of law; that North Carolina Prisoner Legal Services ("NCPLS") no longer provides legal services to North Carolina prisoners in civil matters; that the issues in this case are complex and include many constitutional claims and state and federal law violations; that the Plaintiff has been arbitrarily transferred from his normal housing facility, so that it will be very difficult for him to interview and gather statements and other evidence from potential witnesses; that discovery will be extensive and involve sensitive issues; and that the ends of justice will be best served if counsel is appointed.  [Doc. 3].

There is no absolute right to the appointment of counsel in civil actions such as this one.  Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel.  Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). Plaintiff has failed to demonstrate the existence of exceptional circumstances that would warrant

the appointment of counsel and this Motion will be denied. Moreover, the Motion is moot insofar as the Court will provide the Plaintiff the opportunity to request that NCPLS be appointed to represent him for purposes of discovery.

## IV.  CONCLUSION

In sum, Plaintiff has stated claims under the ADA and RA against NCDPS, and under § 1983: for retaliation against Defendants Wallace, Newman, Godwin, Browning and Williamson; for interfering with the mail against Defendant Newman; for inhumane conditions of confinement against Defendants Browning, Williamson, and Newman; and for supervisory liability against Defendants Ishee, Browning, Williamson, and Godwin.  The individual capacity claims under ADA and RA, and the § 1983 claims against NCDPS are dismissed with prejudice; the remaining claims are dismissed without prejudice.  The Court declines to exercise supplemental jurisdiction over the Plaintiff's North Carolina claims.  The Plaintiff's Motion for the Appointment of Counsel is denied.

This Court's Local Rule 4.3 sets forth the procedure to waive service of process for current or former employees of NCDPS in actions filed by North Carolina State prisoners.  In light of the Court's determination that this case passes initial review, the Court will order the Clerk of Court to

commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for Defendants Wallace, Newman, Godwin, Browning, Williamson, and Ishee.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The Complaint [Doc. 1] has passed initial review with respect to the Plaintiff's claims for ADA and RA violations against NCDPS and the Plaintiff's claims pursuant to § 1983 for retaliation against Defendants Wallace, Newman, Godwin, Browning and Williamson; for interfering with the mail against Defendant Newman; for inhumane conditions of confinement against Defendants Browning, Williamson, and Newman; and for supervisory liability against Defendants Ishee, Browning, Williamson, and Godwin.

2. The Plaintiff's ADA and RA individual capacity claims, and the § 1983 claims against NCDPS are **DISMISSED WITH PREJUDICE**.

3. The remaining claims are **DISMISSED WITHOUT PREJUDICE**.

4. The Clerk shall commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for Defendants Wallace, Newman, Godwin, Browning, Williamson, and Ishee, who are alleged to be current or former employees of NCDPS.

5. The Plaintiff's Motion for the Appointment of Counsel [Doc. 3] is

**DENIED**.

The Clerk of Court is respectfully instructed to mail the Plaintiff an Opt-In/Opt-Out form pursuant to the Standing Order in Misc. Case No. 3:19-mc-00060-FDW, and a copy of this Order.

**IT IS SO ORDERED.**

Signed: January 26, 2022

Martin Reidinger
Chief United States District Judge